JACOBSON, Respondent, vs. BRYAN and another, Appellants.

*November 11, 1943—January 18, 1944.*

360

For the appellants there was a brief by *Hale & Skemp* of La Crosse, and oral argument by *Quincy H. Hale*.

For the respondent there was a brief by *Gordon, Law, Brody & Johns* of La Crosse, and oral argument by *Lawrence J. Brody*.

FOWLER, J.  The plaintiff sustained injuries in a collision on the highway between an empty milk truck he was driving and a truck driven by Winthrop Bryan loaded with crushed limestone, which he claims were proximately caused by the negligent driving of Bryan and sues Bryan and his insurer to recover damages therefor.  There was a jury trial.  The jury by special verdict found Bryan causally negligent in respect of lookout, speed, and position on the highway and management and control, and acquitted the plaintiff of contributory negligence.  Judgment was entered for the damages as assessed by the jury.  The defendants appeal.

The defendants claim that none of the findings of the jury is supported by the evidence.  We consider that all are so supported.  When the only question involved is whether the evidence supports findings and we consider that it does, we do not ordinarily file an opinion.  ·Were this the only question involved we would not file one in this case.

The defendants also claim that the court erred in receiving in evidence over objection of defendants the report of a traffic officer who came to the place of collision a short time after the collision occurred.  The report was a printed form on a large card which the officer filled in by making check marks in squares after the items on the card.  One item on the card covered "Manner of collision."  Under this heading were items numbered 1 to 5.  The fifth item was "Sideswipe" and the square after this item bore the officer's check mark.  The other items were "1. Angle collision.  2. Head-on.  3. Rear end.  4. Backed into other vehicle."  The only thing on the

card which the defendants claim was prejudicial was the item "Sideswipe."

The trial court held that it was the officer's duty to make and file the report; that his experience in viewing situations after collisions made him an expert; and that because of these matters the card was admissible in evidence. The officer was no better qualified to draw conclusions from what he saw after the collision than any person of ordinary intelligence and therefore was not an expert. And if he were an expert and qualified to give an opinion as to whether the collision was a "sideswipe" or an "angle collision" his report would not be admissible in evidence, but to make his opinion admissible he would have to give it on the witness stand under oath. But assuming that the card was not receivable in evidence, the admission of it does not require reversal of the judgment unless it appears to us from the record that the admission of it was prejudicial.

Sec. 274.37, Stats., admonishes and directs us as to our duty under the instant situation. So far as here material it reads as follows:

"No judgment shall be reversed . . . or new trial granted in any action . . . on the ground of . . . the improper admission of evidence, . . . unless in the opinion of the court to which the application is made, after an examination of the entire action, . . . it shall appear that the error complained of has affected the substantial rights of the party seeking to reverse . . . the judgment, or to secure the new trial."

We cannot say that it appears from the record before us that the admission of the report affected the defendants' "substantial rights." If we assume, as defendants' counsel contends, that the evidence shows or warrants the inference that the collision was an "angle collision" rather than a "sideswipe," this would not necessarily or presumptively show that the admission of the card affected any "substantial

rights" of the defendants. That it did affect his substantial rights must affirmatively appear from all the evidence bearing upon the point, and we are constrained to hold that this does not so appear. It rather appears to us that if the jury accepted the card as proof that the collision was a "sideswipe" this inference may have been to the advantage of the defendants rather than to the plaintiff. For if the collision was a "sideswipe" it was not an "angle collision;" and if it was not an "angle collision" this would tend to defeat plaintiff's claim that the collision was caused by the defendant's turning left to pass ahead of the truck instead of keeping right or turning further right to avoid a collision. True, it may have been to the plaintiff's advantage as tending to show that the plaintiff had entirely crossed the near half and was wholly on the far half of the state road as the plaintiff claimed. But whether it operated to the advantage of the one party or the other is wholly speculative and we cannot say it was prejudicial to the defendant.

The accompanying plat drawn an inch to twenty feet scale makes the entire situation clearer than we can make it by a mere statement. It is undisputed that the plaintiff was driving south on the county road which was graveled to a width of eighteen feet. The defendant Bryan was driving westerly on the state road which was surfaced with black-top to a width of thirty-two feet. The plaintiff turned left at the intersection. The collision occurred on the state road. It was broad daylight, the weather was clear, and the roads dry. The angle of the intersection toward the northeast is seventy degrees. From the evidence the jury might properly infer facts as stated following: The point of impact was indicated by a gouge mark sixteen feet long made by the frame of defendants' truck, which collapsed at the junction of the cab with the gravel box, the front end of the box falling to the ground and the rear supported by the standing rear wheels. The easterly end of the gouge was sixteen feet six inches from

the extended line of the east right-of-way line of the county road, and sixty-five feet easterly from the extended line of the graveled part of that road. The trucks came to rest at the extreme south side of the black-top with their front ends together at some mailboxes outside the black-top, the defendants' truck facing south and the plaintiff's tipped on its side beside the defendants.' The gouge was south of the center of the state road. The plaintiff's counsel claimed that the plaintiff's truck was wholly south of the center of the state road when the collision occurred. Defendants' counsel claimed that his truck was north of the center of the state road as he approached the point of collision and the plaintiff's truck was across his path. The defendant driver was then going thirty-five miles per hour, perhaps much faster as the crushed stone was thrown over the cab and the plaintiff's truck and scattered along the black-top for sixty-three feet. The plaintiff was shifting into second gear going ten miles per hour. The plaintiff had stopped at the intersection before turning and looked to his left for traffic. There were shrubs at the northeast corner of the intersection that obstructed the view. From where he stopped he saw to his left one hundred fifty to two hundred feet up the state road and the defendants' truck was not visible. The defendant driver had an unobstructed view of the state road from a hilltop three hundred feet easterly from the intersection. He did not see plaintiff's truck until twenty-five or thirty feet from it.

We are of the opinion that the facts being as above stated, as the jury might properly find them, the facts sustain our conclusions that the findings of the jury are supported by the evidence and that the admission of the officer's report was not prejudicial.

The above is sufficient to require affirmance of the judgment, but as we affirmed the learned trial judge in refusing to admit in evidence a traffic officer's report in the case of *Reynolds v. Wargus,* 240 Wis. 94, 2 N. W. (2d) 842, and

did so without discussing the question of its admissibility, and in view of the fact that other trial judges may be of diverse opinions as to the admissibility of such reports, we consider it advisable to decide whether the card was admissible either as a whole or in part.

The objection to the receipt of the card was general. No special objection was made to the receipt of the item relating to "manner of collision" on the ground that the item gave the opinion of the officer or gave his conclusion as to a fact to be decided by the jury. When part of a written statement is receivable in evidence and part not, to exclude the part not receivable special objection must be made to the inclusion of the part not receivable and the grounds for its exclusion given or the receipt of the statement as a whole is not erroneous. We consider that under that rule the receipt of the card in evidence was not improper. As to the necessity of making special objection see 1 Wigmore, Evidence (3d ed.), p. 332 *et seq.,* sec. 18; *Maxcy v. Peavey Publishing Co.* 178 Wis. 401, 406, 190 N. W. 84.

On hearing of the motions after verdict the trial judge ruled the card receivable in evidence, (1) because it was filled in and filed pursuant to the officer's official duty, and (2) because from his experience in viewing situations after accidents the officer was an expert witness. Proposition (2) is untenable, for the reason above stated. If the card was admissible it is because it was admissible under proposition (1).

Whether some of the statements contained on the card were receivable is a question on which the courts differ. 5 Wigmore, Evidence, *supra,* devotes nearly two hundred pages to the admissibility of "Official Statements." At p. 531 *et seq.,* sec. 1635, the author states his conclusion as to the receipt in evidence of such statements not based on personal knowledge:

"On the one hand, we find a general exclusion of statements not based on personal knowledge (of the officer or his subordi-

nates) ; this exclusion being rested usually on the circumstances that the duty does not extend to such matters. On the other hand, we find a few kinds of statements where it has clearly been made the officer's duty to investigate and record or report irrespective of personal knowledge; in such cases the statements are admitted; but courts are disinclined to recognize many instances as belonging within this class.

"Occasionally a statute makes the result clear by expressly declaring such statements admissible; but, in the absence of statute, courts are found slow to infer merely from the nature of the office any specific duty to record or certify, on the faith of information derived from other persons, matters occurring without the officer's presence,—or, at least, any duty sufficient to render such statements admissible in evidence. This attitude is, on the whole, and apart from specific vagaries, a safe and practical one, because, so far as the sources of the officer's information are not personal to himself, they will in general be equally and sufficiently available in the ordinary way as testimony for the party desiring to make proof. The various instances in which this general question is illustrated may best be noted under the different kinds of documents."

The statement as to "manner of collision" is obviously one not made on the officer's personal knowledge. This is also true as to some other statements on the card. The measurements, position of the trucks, and the physical facts were within his personal knowledge and might be held receivable while the statements not so made might not be.

The paragraph from Wigmore first above quoted is so indefinite as not to be very helpful. It indicates that the courts of last resort in different jurisdictions rule as it pleases them. We are of opinion that so far as the items of evidentiary physical facts on the card are based upon the officer's own acts or observation they are admissible, but so far as they are based on his conclusions from what others told him or are his conclusions from what he observed as to how the collision occurred they are inadmissible. The item "sideswipe" was therefore not admissible.

The paragraph last stated is more definite. Where governing statutes exist their intent should be carried out, but their intent is for the court to determine. We have a statute that by its terms is very broad. So far as here material it reads:

"Sec. 327.18   *Official records.*   (1) *As evidence.* Every official record, report or certificate made by any public officer, pursuant to law, is evidence of the facts which are therein stated and which are required or permitted to be by such officer recorded, reported or certified. . . ."

If this statute were applied literally to the instant situation it would admit the whole card in evidence. To construe it as so applicable would make the conclusion of the officer as to the "manner of collision" admissible as evidence of that fact. We consider, however, that the statute does not so apply. To so apply it would make admissible as evidence the plainest kind of opinion evidence by persons not qualified as experts— make so admissible the plainest conclusions as to questions to be decided by the court or jury. We cannot conceive that such is the intent of the statute. Whatever the statute may be construed to mean it cannot be construed to make receivable in evidence anything to which the officer could not testify upon the witness stand, and were he so testifying his conclusion or opinion that the collision was a "sideswipe" would not be admissible. If special objection had been made to receipt in evidence of the item of the card pertaining to the "manner of collision" it would have been error to overrule it. But so far as the card was a mere memorandum of measurements and the physical facts observable by the officer it was receivable.

The history of sub. (1) of sec. 327.18, Stats., supports this construction. It was in a revisor's bill (No. 10, S., ch. 523, sec. 78) enacted in 1927 as a new provision added to old statutes stated in subs. (2) and (3). A revisor's note accompanied sub. (1) saying that it was "merely declaratory of the existing rule." No rule existed in 1927 that made admissible

an officer's conclusion or opinion as to an ultimate fact inferable only from evidentiary facts. We cannot construe the enactment of the revisor's bill as changing existing law or rule unless the language of it definitely compels such construction, and its language is not so compelling.

*By the Court.*—The judgment of the circuit court is affirmed.

FAIRCHILD, J. (*dissenting*). If the certificate of the officer that the collision was a "sideswipe" of the cars was improperly admitted, as seems to be the case under *Reynolds v. Wargus,* 240 Wis. 94, 2 N. W. (2d) 842, I fail to see how we can hold that it is not a prejudicial error. As to the sufficiency of the objection to the admission of the traffic officer's report, it appears that the plaintiff was making a general offer of a paper which ordinarily would not be qualified as evidence. There was no reason for supplementing the testimony already given and it was not offered for the purpose of refreshing the memory of the traffic officer. It was offered as an independent piece of evidence and under the opinion of the majority in this case and the opinion in the *Reynolds Case,* this was improper. If the objection to the admission of evidence is to advise the court and offeror of the evidence that there is an issue of law as to its admissibility an objection serves the same purpose as a demurrer. 1 Wigmore, Evidence, p. 322, sec. 18. In this case, the offer and objection fully advised the court of the issue of law as to its admissibility and there is no occasion for the objector to file a bill of particulars. 6 Jones, Commentaries on Evidence (2d ed.), p. 4988, sec. 2521, says:

"It is not true that a general objection that evidence offered or testimony sought is 'incompetent, irrelevant, and immaterial' is never adequate as a predicate upon which to raise the question of the admissibility of evidence. On the contrary, where the court may be expected readily to apprehend the

grounds of objection and when it is manifest that further explanation of the objection is unnecessary, a general objection to evidence which is not admissible for any purpose is sufficient. . . .

". . . the sufficiency of an objection is to be determined by the nature of the evidence objected to, the obviousness of inadmissibility, and whether the objection is to the form or to inadmissibility for any purpose." See also *Rosenberg v. Sheahan,* 148 Wis. 92, 133 N. W. 645; *Heap v. Parrish,* 104 Ind. 36, 3 N. E. 549.

The sideswiping theory considers the plaintiff on the south side of the highway (his side) and the defendant invading that side. The angle-collision theory is based on the claim that the head of the defendant's truck struck plaintiff's truck at an angle before he had crossed to the south side of the highway. Consider under the evidence that the defendant is negligent. There still exists the question of the cutting of the corner by plaintiff. The study to be made in determining the likelihood of prejudice to come from the officer's report that it was a sideswipe must be to ascertain whether the improper evidence was capable of throwing the balance against the objector and affecting the decision. There is testimony with respect to plaintiff's conduct that he darted out into the highway cutting the corner thus blocking defendant's pathway. He came into the highway east of where he should have, thus reducing the notice of his presence which the defendant would have had, had plaintiff made the turn as the law says he should, by that much time as it would take to travel that short distance and it deprived the defendant of the opportunity to swerve to the right; that is, to the north into the north-and-south highway. The formation of the corner is such that cutting the corner by the plaintiff would place him negligently in a position of danger not only to himself but to anyone going west on Highway 82. If this is true, an emergency had developed toward which each contributed and the respective contribution of negligence of each was to be compared. The officer's

report that it was a sideswipe would be influential in creating an opinion that plaintiff had reached and was safely on his side of the road. The jury were not unanimous on this point. And with the dispute as it is I am of the opinion that the report of the officer was too influential to be passed as not prejudicial to the defendant.

That it was not a sideswipe appears from all the evidence other than the certificate. The head of defendant's truck ran into the side near the front of plaintiff's truck, then evidently moved in a diagonal direction and pushed to the south where plaintiff's truck tipped over on its side. The picture published herewith seems to tell that part of the story too plainly to be doubted.