## SIMPSON v. STEIN.

(Court of Appeals of District of Columbia. Submitted October 16, 1922. Decided November 6, 1922.)

### No. 3775.

1. **Trial ☞260(8)—In action for injuries from collision between bicyclist and team of horses, instructions given held to make additional requests unnecessary.**

In an action for injuries to a bicyclist, caused by a collision with defendant's team of horses, an instruction that, if plaintiff turned his bicycle into the horses, as claimed by defendant, he could not recover, *held* to render unnecessary the granting of defendant's request relative to the effect of plaintiff losing control of the wheel, and of driver's right to assume that plaintiff would not ride negligently.

2. **Appeal and error ☞1060(3)—Misconduct of attorney in argument, to require reversal, must leave erroneous uncorrected impression.**

To warrant reversal of a case because of attorney's misconduct during the argument to the jury, the Court of Appeals must be satisfied that the misconduct was likely to mislead, improperly influence, or prejudice the jury against the opposing party, and that the trial court failed to take disciplinary measures, obliterating this impression.

3. **Appeal and error ☞688(2)—Statement of counsel in argument that party had been browbeaten and humiliated held not error.**

The fact that plaintiff's counsel stated in his argument that plaintiff had been browbeaten, humiliated, and confused by opposing counsel *held* insufficient to require reversal, where the record did not show the tone of voice or the manner or method adopted by counsel.

Appeal from the Supreme Court of the District of Columbia.

Action by Louis Stein against Ellsworth T. Simpson. Judgment for plaintiff, and defendant appeals. Affirmed.

W. Gwynn Gardiner, of Washington, D. C., for appellant.

T. M. Wampler and R. E. Lynch, both of Washington, D. C., for appellee.

JAMES FRANCIS SMITH, Acting Associate Justice. This is an appeal from a judgment entered after trial and the verdict of a jury in favor of appellee for damages for personal injuries. The testimony of Stein, the plaintiff, was to the effect that he rode a bicycle south on Seventh street, past the center of Q street, and then turned east to the south side of Q street; that when he was about 20 feet east of Seventh street and within 2 feet of the south curb of Q street, he was struck from behind by the right horse of a team driven by an employee of the defendant, knocked off his bicycle, and dragged for some 4 or 5 feet to the hind legs of the horses.

As a result of the collision, the plaintiff was bruised on the right hip, one of his fingers was split open, and his face and neck injured to such an extent as to leave scars. Because of the injuries so received the appellee was unable to work and was away from his business for a period of two weeks.

Lewis, the driver of the wagon, testified on behalf of the defendant that he was driving a team of horses drawing a loaded wagon east on the south side of Q street about 4 or 5 feet from the curb; that before the team reached Seventh street the plaintiff was "holding to the tail gate of the wagon," and that immediately after crossing Seventh street into Q street he rode to the north or left side of the wagon and attempted to pass to the south in front of the team, then turned to go north, ran into the left side of the left horse, and was knocked into the middle of the street.

Mrs. Mary Hodge, called for the defendant, testified that the man who was hurt was riding on a bicycle about 6 feet ahead of the horses, but between the horses and the south curb of Q street; that he started to go across the street to the north in front of the horses, but that his shoulder struck the head of the horse nearest the curb, and he went under the horses.

[1] On the trial, and by request of the defendant, the court instructed the jury as follows:

### "Defendant's Prayer No. 2.

"The court instructs the jury that, if you find from the evidence in this case that the plaintiff, Louis Stein, on the 10th day of February, 1917, was traveling in an easterly direction on Q street, and that the defendant's wagon was being driven in the same direction on Q street at a lawful rate of speed, and the plaintiff attempted to pass the wagon and turned in front of the horses, or ran into the horses, or against the horses, while the defendant's driver was using reasonable care, and that the acts of the plaintiff in so doing was the approximate cause of the injury or contributed to the injury in any wise, then your verdict in this case must be for the defendant."

The following instructions, prayed for by the defendant, were denied, and exception noted:

### "Defendant's Prayer No. 3.

"The court instructs the jury that, if you find from the evidence in this case that the plaintiff, Louis Stein, was traveling on Q street, Northwest, across Seventh street, going in an easterly direction, and you further find from the evidence that the plaintiff either lost control of his wheel, and rode his wheel in front of the horses, which caused the collision, or turned his wheel and attempted to cross the street to the north in front of the team, and was so close to the heads of the horses that the horses struck him, knocking him down and causing the collision, and you further find that the driver of the wagon was driving the said wagon with such care and caution as a reasonable, prudent, and cautious person would do under the circumstances, then your verdict in this case should be for the defendant."

### "Defendant's Prayer No. 8.

"You are instructed that the driver of the wagon had the right to assume that the plaintiff, while riding his bicycle along the street, would not do so in a careless or negligent manner."

The denial of defendant's prayers Nos. 3 and 8 is assigned as error, as is also the action of the court in permitting plaintiff's counsel during the course of his argument to make the following statement to the jury:

"Indeed, I am willing to rest this case on the testimony of the plaintiff, for he has told you the truth. He has been browbeaten, humiliated, and confused

by Mr. Gardiner, but nevertheless he is honest, and he told you just how this accident happened. His demeanor shows his honesty."

The issue raised by the evidence in the case was: Did the defendant's driver, as claimed by the plaintiff, run the plaintiff down from behind on the south side of the street, within a few feet of the curb, or did the latter, as contended by the defendant, turn his bicycle in front of the horses, or into or against the horses, and thereby bring about a collision, which resulted in his fall from the bicycle and the injuries received by him?

The court, in its instructions, fully covered the facts as they were contended for by the defendant, and in clear and unmistakable language instructed the jury that the verdict must be for the defendant, in case the plaintiff turned in front of the horses, or ran into or against the horses. Those instructions were predicated, not on what the defendant's driver had a right to assume that the plaintiff would or might do while riding his bicycle, but on what the plaintiff actually did according to the contention of the defendant. Having said to the jury that the plaintiff was not entitled to recover, if he did what the defendant claimed that he did, the court was not bound to go farther, and inform the jury that the defendant's driver "had the right to assume that the plaintiff, while riding his bicycle along the street, would not do so in a careless or negligent manner."

The instruction requested by defendant's prayer No. 3 said no more than was asked for and granted in prayer No. 2, and was therefore properly denied. Whether the defendant rode in front of the horses because he lost control of his wheel, or whether his wheel "wabbled" in front of the horses, or whether he turned his wheel and attempted to cross in front of the team, the act was his act, and the requirements of that phase of the case were fully satisfied by the instruction that the defendant was blameless if the plaintiff attempted *to pass the wagon and turned in front of the horses or ran into or against the horses.*

[2] In order to reverse the case on the third assignment of error, we must be satisfied from the record: First, that the plaintiff's attorney, in his argument to the jury, was guilty of misconduct which was likely to mislead, improperly influence, or prejudice the jury against the defendant; second, that, after objection, the court, by failing to apply appropriate disciplinary measures or to give suitable instructions, left the jurors with wrong or erroneous impressions, which were likely to mislead, improperly influence, or prejudice them to the disadvantage of the defendant.

[3] Inasmuch as the bill of exceptions does not disclose the tone of voice or the manner or method adopted by counsel for defendant in examining the plaintiff, we are unable to say whether that examination was properly or improperly conducted, and therefore the propriety of the criticism of it by plaintiff's counsel cannot be determined. Moreover, the jury was present during the trial, and, conceding that counsel's criticism was wholly unjustified, it is not safe to say on the meager record before us that an unbiased jury became biased because

of a statement at variance with the facts as they must have been personally known to every juror in the box.

The judgment appealed from is affirmed.

Judge JAMES FRANCIS SMITH, of the United States Court of Customs Appeals, sat in the place of Mr. Justice VAN ORSDEL, in the hearing and determination of this appeal.